**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**UNITED STATES OF AMERICA**

v.                                                               **CRIMINAL NO. 4:10cr056**

**DERRICK REID**

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY ASSISTANT UNITED STATES ATTORNEY CURTIS IVY, JR. FROM PROSECUTION OF THE CASE AND TO DISMISS THE SUPERSEDING INDICTMENT**

The United States, by and through its attorney, the United States Attorney for the Northern District of Mississippi, respectfully opposes defendant's Motion to Disqualify Assistant United States Attorney Curtis Ivy, Jr. from prosecution of the case and to dismiss the superseding indictment. The Government asserts the following in support of its opposition to the defendant's motion:

**Procedural History**

1. On or about March 25, 2010, a federal Grand Jury in the Northern District of Mississippi returned an indictment charging the defendant, Derrick Reid and others with offenses related to distributing controlled substances.

2. On or about March 25, 2010, the same grand jury returned a separate indictment charging Derrick Nelson and a co-defendant with distributing a controlled substance.

3. On or about April 22, 2010, defendant Derrick Nelson appeared before United States Magistrate Judge David Sanders for arraignment. During the arraignment, Judge Sanders began reading the Indictment as to Derrick Reid. Subsequently, Derrick Nelson was released and relayed information relative to Derrick Reid's Indictment to Reid.

4. During a series of telephone calls which occurred between April 22, 2010 and April 26, 2010, Derrick Reid informed Gales they may be the subjects of a pending federal indictment. Derrick Reid explains the indictment may be the result of a traffic stop which occurred on February 20, 2010, during which two kilograms of cocaine hydrochloride was recovered. Derrick Reid further explained he obtained a hotel room in his name for co-defendant, Anita Allen. Derrick Reid, and his brother, co-defendant Damion Reid further attempt to influence Gales and his potential testimony by offering him money.

5. On or about April 26, 2010, Derrick Reid was arrested and was advised of the charges against him at an initial appearance.

6. A detention hearing was scheduled. Prior to the initial appearance, Edward Bogen was advised his client was captured by video tape delivering what appeared to be the cocaine hydrochloride to co-defendant Anita Allen at the Hampton Inn in La Place, LA. In addition, the government allowed Edward Bogen to listen to the telephone calls it intended to present during the detention hearing. As a result, Derrick Reid waived the detention hearing.

7. Deputy United States Marshal, Wayne Allen informed the government he needed to transport the defendant, Derrick Reid, to the Bolivar County Detention Center. Drug Enforcement Administration Special Agent Don Douglas, requested we be given a few minutes to speak with Reid. Allen agreed, but only permitted twenty minutes.

8. Edward Bogen asked the government to play the calls for his client and we exited the courtroom and moved to a witness room on the courthouse. The telephone calls were then played for Reid. Thereafter, Reid was asked if he desired to cooperate with the government. Based upon the newly discovered evidence, Bogen was informed that the government would seek additional

charges if his client declined.

9. Reid declined to cooperate. Reid was transported to the Bolivar County Detention Center by SA Douglas and Xavier Redmond of the Greenville Police Department.

10. Defendant Reid has filed the instant motion, alleging that the Superceding Indictment is "obviously in retaliation for the defendant Derrick Reid refusing to cooperate with the prosecution."

11. Contrary to defendant Reid's motion, undersigned counsel, nor anyone else representing the United States, did not act in an unprofessional manner, much less converse in a raised voice.

12. The government's decision to charge the defendant with the additional crimes alleged in the Superceding Indictment is based on additional evidence discovered during its continuing investigation and after the return of the original Indictment on March 25, 2010.

**Argument**

13. The Supreme Court has never held a prosecutor's pretrial decision vindictive and has cautioned courts against adopting "an inflexible presumption of prosecutorial vindictiveness in a pretrial setting." *United States v. Goodwin*, 457 U.S. 368, 381 (1982). In *Goodwin*, the Supreme Court found that a prosecutor's decision to add additional charges against a defendant prior to trial did not create a presumption of vindictive prosecution, and it sharply distinguished pretrial and post-trial prosecutorial decisions: "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Id*. at 382. Other circuit courts have similarly rejected a finding of presumption of vindictiveness for pretrial charging decisions. *See United States v. Morris*, 2011 WL 310728, *2 (9th Cir. 2011) (holding Government's "take it or leave it" plea offer

in drug case, under which it agreed not to file an information listing defendant's prior felony drug offense if defendant agreed to plead guilty and cooperate as a witness in the upcoming murder and drug dealing trial of the leader of defendant's gang, did not violate due process); *United States v. Kent*, 2011 WL 383977, *5 (9th Cir. 2011) (holding there was no evidence that the government was improperly motivated by vindictiveness toward defendant when it filed an information alleging defendant's prior felony convictions, after defendant had refused to enter a cooperation plea agreement; the government carried out its plea threat to file the information unless defendant agreed to plead guilty pursuant to a cooperation agreement, which defendant effectively rejected*)*; *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 442 (9th Cir. 2007) ("courts should rarely apply a presumption of vindictiveness to a prosecutor's pretrial decisions," citing *Goodwin*); *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1167 (9th Cir. 1982) ("cases involving increased charges or punishments after trial are to be sharply distinguished from cases in which the prosecution increases charges in the course of pretrial proceedings"); *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006) (presumption of vindictiveness does not apply to pretrial decisions by prosecutor, quoting *Goodwin*); *United States v. Perry*, 335 F.3d 316, 324 (4th Cir. 2003) (presumption of prosecutorial vindictiveness is generally warranted only in post-conviction setting, and "[c]ourts have been extremely cautious in applying the presumption in the pretrial context"); *United States v. Koh*, 199 F.3d 632, 639 (2d Cir. 1999) (presumption of prosecutorial vindictiveness generally does not arise in pretrial setting).

14. Court decisions have considered the realities of the criminal justice system and concluded that vindictiveness will not be found where a prosecutor increases the charges after the defendant rejects a plea offer. In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d

604 (1978), the Court held that due process is not implicated when a prosecutor threatens to seek conviction on a greater offense if the defendant does not plead guilty and in fact does so when the defendant proceeds to trial. The Court declined to characterize this conduct as "punishment or retaliation" offensive to due process, *Id*. at 363, 98 S.Ct., at 668, instead noting that such was a mere by-product of the " 'give-and-take negotiation common in plea bargaining.' " *Id.* at 362, 98 S.Ct. at 667 (quoting *Parker v. North Carolina*, 397 U.S. 790, 809, 90 S.Ct. 1458, 1479, 25 L.Ed.2d 785 (1970).

15. This Circuit has also dealt with the issues surrounding vindictive prosecutions. In *United States v. Johnson*, 91 F.3d 695, 698 (5th Cir. 1996), the Fifth Circuit held a prosecutor has broad discretion during pretrial proceedings "to determine the extent of the societal interest in prosecution." Id. at 382, 102 S.Ct. at 2493. Absent a presumption of vindictiveness in this context, the defendant must prove that the prosecutor's conduct was actually vindictive. *Id*. The Court further explained in determining if a presumption of vindictiveness is warranted, the appropriate inquiry is whether ... for example, where, after the defendant's prior exercise of a procedural or substantive legal right, or his having succeeded in reversing a conviction on appeal, the prosecution acts arguably to punish the exercise of such rights, by increasing the measure of jeopardy by bringing additional or more severe charges. *Id*. *United States v. Ward*, 757 F.2d 616, 619-20 (5th Cir.1985).

16. In the instant case, there is objective evidence in the record that the Government's decision to seek a superseding indictment was not motivated to punish the defendant for asserting any right, Constitutional or otherwise. Moreover, the CCE charge was brought in a pretrial context and under circumstances during which the Government's "assessment of the evidence had not yet

crystalized," as contemplated by the Supreme Court in *United States v. Goodwin*, 457 U.S. 368, 381 (1982).

  17. Ultimately, the problem with the defendant's argument here is that its logical outcome seeks to characterize all instances during which the Government filed additional or more severe charges against a defendant following a right to proceed to trial as evidence of prosecutorial vindictiveness. Such an interpretation flies in the face of *United States v. Goodwin*, 457 U.S. 368 (1982), (which gives greater latitude to the Government in pretrial contexts) and would have the illogical result of allowing a defendant to undermine the Government's effort to correct deficiencies in an indictment, or to eliminate pleading deficiencies, or to correct an improper assessment of the extent of the evidence supporting a prosecution. The return of a superseding indictment almost always accomplishes one of the otherwise legitimate objectives, and should not be characterized as vindictive merely because the repair efforts follow on the heels of a defendant's desire to proceed to trial. In this case, there is objective evidence that the superseding indictment adding the charges of a CCE, an additional drug conspiracy, obstruction of a criminal investigation, tampering with a witness, and utilizing a communication facility to a arrange a drug deal were sought to address legitimate societal interests. The government's decision to add charges for which it believes there is now probable cause, and which more accurately reflect the seriousness of the alleged offense, is a proper exercise of prosecutorial discretion, and does not constitute vindictive prosecution.

  18. The defendant further argues, the lead prosecutor in this matter should "be disqualified from having any further involvement with this case" due to the aforementioned alleged misconduct. It bears brief discussion that disturbing the government's choice of the case prosecutor without any showing of harm to the defendant or the court, infringes on the constitutional separation of powers.

19. The United States Attorney for this district is committed to the prosecution of this case, and that decision is left entirely to his discretion, absent unconstitutional conduct not alleged here. *See*, *e.g.*, *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."); *Wayte v. United States*, 470 U.S. 598, 607 (1985) ("This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."); *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987) ("A prosecutor exercises considerable discretion in matters such as the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be charged with what offenses, which persons should be utilized as witnesses, whether to enter into plea bargains and the terms on which they will be established, and whether any individuals should be granted immunity. These decisions, critical to the conduct of a prosecution, are all made outside the supervision of the court."); *United States v. Abuhouran*, 161 F.3d 206, 216 (3d Cir. 1998) (recognizing "substantial restrictions on judicial review of nonconstitutional challenges to prosecutorial decision making"), cert. denied, 526 U.S. 1077 (1999).

20. Absent constitutional allegations, there is no authority for the Court's assumption of the executive's prerogative to prosecute crime as it sees fit, or to upset the common and beneficial practice in which prosecutors who have prosecuted a broad set of crime continue to pursue all related matters to their conclusion.

21. In a preeminent statement of these principles, the Fifth Circuit, sitting *en banc*, stated: Although as a member of the bar, the attorney for the United States is an officer of the court, he is

nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions. *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (en banc).

22. In *Matter of Grand Jury Subpoena of Rochon*, 873 F.2d 170 (7th Cir. 1989), the court, addressing the judicial disqualification of a federal prosecutor, declared: such an order raises sharp separation-of-powers concerns. As the Ninth Circuit has stated, although the "'grand jury is subject to a supervisory power in the courts, aimed at preventing abuses of its processes or authority,' *id*. at 1313 (quoting 1 Wright, Federal Practice and Procedure § 101, at p. 151 (1969)), the separation-of-powers principle imposes significant limits on it. As a threshold matter, a court may not exercise any supervisory power absent 'a clear basis in fact and law for doing so.' ... Judicial integrity is rarely threatened significantly when executive action does not violate the constitution, a federal statute, or a procedural rule. A federal court that imposes sanctions on executive conduct that is otherwise permitted by the Constitution, a federal statute or a rule will most likely be invading the executive sphere . ..." *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir.1980) (citations omitted). 873 F.2d at 174. Thus, the Seventh Circuit concluded, disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Id*. at 176 (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)).

23. Recognizing these principles, courts have refrained from disqualifying prosecutors in the absence of proof of actual prejudice to a defendant. *See*, *e.g.*, *United States v. Durenberger*,

1993 WL 738477, at *5 (D. Minn. Dec. 3, 1993) ("Whether their conduct represents a case of overzealous prosecution by attorneys having little or no regard for prosecutorial ethics or a case of repeated inadvertence bordering on recklessness need not be resolved in the absence of a showing of prejudice or threat of future prejudice."); *Bullock v. Carver*, 910 F. Supp. 551, 560 (D. Utah 1995) ("The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except when necessary"); *United States v. Santiago-Rodriguez*, 993 F. Supp. 31, 38 (D.P.R. 1998) (same). *See also United States v. Vlahos*, 33 F.3d 758, 763 (7th Cir. 1994) (where the United States assigned an attorney aware of her duties and free of any conflicts of interest, the district court had no reason to disqualify her or her office, and the appellate court engages in interlocutory and mandamus review to reverse the action). Given that there was no prejudice here, disqualification offends the separation of powers.

24.  Here, there is no prejudice to the defendant or any other harm to the judicial process from the continued involvement of the lead prosecutor. There is no evidence that any prosecutor has wavered in the pursuit of this case, or done anything more than pursue charges it had a basis to seek. We respectfully submit that the district court has no constitutional authority in these circumstances, in the absence of any prejudice or actual conflict. In sum, Reid was free to accept or reject the government's offer. He chose not to accept it. The fact that the government followed through on its desire to seek additional charges in no way violated his due process rights. "[A] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *See Shiel v. United States*, 515 A.2d 405, 409-410 (D.C. 1986) (no vindictive prosecution where defendant and four other demonstrators who elected to stand trial faced a more serious charge of

unlawful entry than 153 demonstrators who posted and forfeited collateral on the lesser charge of unlawful assembly), cert. denied, 451 U.S. 964 (1981); Washington v. United States, 434 A.2d 394, 396 (D.C. 1980) (no prosecutorial vindictiveness where government re-indicted defendant on more serious charges just before trial, after rejecting defendant's offer to plead guilty to bail-jumping); *United States v. Schiller*, 424 A.2d 51, 56 (D.C. 1980) (no vindictiveness found where prosecution re-indicted defendants after defendants sought to have their cases joined for trial), cert. denied, 451 U.S. 964 (1981); *United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980) (when counts are added to a case, the question is "whether a reasonable person would think there existed a realistic likelihood of vindictiveness," so that the prosecutor must come up with an "objective explanation" for his actions, i.e. discovery of previously unknown evidence), cert. denied, 450 U.S. 927 (1981). The government sought to file the charges in the instant case as soon as it was practically possible.

WHEREFORE, the Government requests this court to deny the defendant's motion.

Respectfully submitted,

JOHN MARSHALL ALEXANDER
United States Attorney

By: */s/ Curtis Ivy, Jr.*
CURTIS IVY, JR., MSB #10211
Assistant United States Attorney
900 Jefferson Avenue
Oxford, MS   38655-3608
Telephone 662/234-3351
Fax 662/234-3372

## CERTIFICATE OF SERVICE

I, CURTIS IVY, JR., Assistant United States Attorney for the Northern District of Mississippi, hereby certify that I electronically filed the foregoing **Government's Opposition to Defendant's Motion to Disqualify Assistant United States Attorney Curtis Ivy, Jr. from Prosecution of the Case and to Dismiss the Superseding Indictment** with the Clerk of the Court using the ECF system which sent notification of such filing to:

Honorable Edward J. Bogen
joshbogen@aol.com

This the 22nd day of February, 2011.

/s/*Curtis Ivy, Jr.*
CURTIS IVY, JR.
Assistant United States Attorney